**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **BJB ELECTRIC, L.P.,** ) | |
| ) | |
| **Plaintiff/Counter-Defendant,** ) | |
| ) | |
| ) | **No. 09 C 3022** |
| **v.** ) | |
| ) | **Judge Joan H. Lefkow** |
| **NORTH CONTINENTAL ENTERPRISES,** ) | |
| **INC.** ) | |
| ) | |
| **Defendant/Counter-Plaintiff.** ) | |

## OPINION AND ORDER

The plaintiff, BJB Electric, L.P. ("BJB Electric"), has sued North Continental

Enterprises ("NCE"), asserting claims arising from an alleged failure to pay for goods delivered

to BJB Electric for sale under two distributorship agreements.[1]  BJB Electric has filed a three-

count counterclaim for breach of the distributorship agreements and, at issue in this document,

for violation of the Illinois Franchise Disclosure Act of 1987 ("IFDA"), codified at 815 Ill.

Comp. Stat. 705/1 *et. seq.* (Count III).  BJB Electric has moved to dismiss Count III for failure to

state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6).  For the following

reasons, BJB Electric's motion to dismiss [#26] will be granted.

---

[1] BJB Electric's complaint bases federal jurisdiction on diversity of citizenship.  Because BJB Electric is a limited partnership, its citizenship is determined by that of its general and limited partners.  *See Market Street Assocs. Ltd. Partnership* v. *Frey*, 941 F.2d 588, 589 (7th Cir. 1991) ("[F]or purposes of deciding whether a suit by or against a limited partnership satisfies the requirement of complete diversity . . . the citizenship of all the limited partners, as well as of the general partner counts.").  BJB Electric has one general and one limited partner: BJB USA Corp., a Georgia corporation with its principal place of business in Ringgold, Georgia, and BJB Beteiligungs GmbH, a German corporation with its principal place of business in Germany.  Because NCE is a Michigan corporation with its principal place of business in Niles, Illinois, the parties' citizenship is completely diverse. In addition, the amount in controversy is alleged to exceed $75,000.  Jurisdiction is therefore proper under 28 U.S.C. §1332.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir.1997). For the purposes of a Rule 12(b)(6) motion, the court takes as true all well-pleaded facts in plaintiff's complaint and draws all reasonable inferences in favor of the plaintiff. *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir.1999). Factual allegations must, however, be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, at 235-36 (3d ed.2004)); see also *Ashcroft* v. *Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1953, 173 L. Ed. 2d 868 (2009) ("*Twombly* expounded the pleading standard for all civil actions.") (citations and internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citations omitted).

## BACKGROUND[2]

BJB Electric is a business engaged in procuring and selling electrical component parts manufactured in Germany and used in the lighting and appliance industries (referred to as "lighting components" and "appliance components," respectively). Prior to 1985, NCE did

---

[2] The facts contained in this background section are derived from the allegations of NCE's counterclaim in accordance with the legal standard set out in the text.

consulting work for BJB Electric.  In 1985, BJB Electric and NCE entered into a distribution agreement whereby NCE would purchase BJB Electric's appliance components and sell them to customers in North America ("Appliance Components Agreement").  Other than specific customers reserved to BJB Electric, NCE was to have the exclusive right to sell and service BJB's appliance components to customers in North America.  Countercl. ¶¶ 7, 9.  The parties dealt continually under the agreement for nearly 25 years.  NCE contends that beginning in 2003 BJB Electric breached the agreement by selling directly to customers developed by NCE.  *Id.* ¶¶ 10, 22.

In 2005, the parties began negotiating a similar agreement under which NCE would sell BJB Electric's lighting components in North America ("Lighting Components Agreement").  The Lighting Components Agreement was executed on March 28, 2006 and provided that NCE "agreed to distribute [l]ighting [c]omponents provided to NCE by BJB Electric to customers and potential customers throughout North America with the exception of a limited number of specific manufacturers."  *Id.* ¶ 13.  NCE alleges that BJB Electric terminated the Lighting Components Agreement without good cause effective December 31, 2007.  *Id.* ¶ 17.  A document titled "Distribution Agreement" reflecting an execution of March 28, 2006 is attached to the counterclaim.

NCE alleges that BJB Electric violated three sections of the IFDA by failing to comply with notice requirements, engaging in fraudulent practices, and terminating the agreements without notice.[3]

---

[3] First, NCE alleges that BJB Electric violated Section 5 of the IFDA, which mandates registration of franchises, by failing to comply with notice and registration requirements.  Countercl. ¶ 34.  Second, NCE alleges that BJB Electric violated Section 6 of the IFDA, which makes unlawful fraudulent practices used "[i]n connection with the offer or sale of any franchise made in this State," by "intentionally dealing directly with NCE's customers."  Countercl. ¶ 33.  Third, NCE alleges that BJB Electric violated Section 19 by terminating their agreements without good cause.  *See* Countercl. ¶ 16.

# ANALYSIS

BJB Electric argues, *inter alia*, that NCE has failed to allege facts that show the relationship between BJB Electric and NCE is a franchise agreement. NCE responds that it has pled sufficient facts to permit the court to infer the existence of a franchise agreement under notice pleading standards.

The IFDA applies only to franchisees and franchisors as defined within the Act itself. *See Vitkauskas* v. *State Farm Mut. Auto. Ins. Co.*, 509 N.E.2d 1385, 190, 157 Ill. App. 3d 317, 109 Ill. Dec. 373 (1987). Three elements are necessary to establish a franchise relationship under Section 3 of the IFDA, which provides in pertinent part,

> (1) "Franchise" means a contract or agreement, either expressed or implied, whether oral or written, between two or more persons by which:
>
>> (a) a franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services, under a marketing plan or system prescribed or suggested in substantial part by a franchisor; and
>>
>> (b) the operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, or other commercial symbol designating the franchisor or its affiliate; and
>>
>> (c) the person granted the right to engage in such business is required to pay to the franchisor or an affiliate of the franchisor, directly or indirectly, a franchise fee of $500 or more.

815 Ill. Comp. Stat. 705/3. "[I]f one element is not satisfied, then the franchise relationship is not satisfied." *Vitkauskas*, 509 N.E.2d at 1391.

Regarding element (b), NCE's counterclaim is devoid of any allegations that it used BJB Electric's name or mark in marketing BJB Electric's lighting or appliance components. Although one might infer, as NCE urges, that NCE used BJB Electric's trademark or trade name because the lighting and appliance components at issue are alleged to be "unique," NCE's Mem.

4

in Resp. at 5, it is certainly not a necessary inference. Even if the court were to make the inference, the counterclaim does not allege that the operation of its business is "substantially associated" with BJB Electric's mark under (b). The implementing regulation[4] pertinent to the statute's "substantially associated" requirement provides,

> A franchisee's business is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising or other commercial symbol . . . if the franchise or other agreement, the nature of the franchise business or other circumstances permit or require the franchisee to identify its business to its customers primarily under such trademark, service mark, trade name, logotype, advertising or other commercial symbol . . . or to otherwise use the franchisor's mark in a manner likely to convey to the public that it is an outlet of the franchisor.

14 Ill. Admin. Code § 200.103. NCE does not allege that it primarily identified its business to its consumers under BJB Electric's name or mark or that it otherwise conveyed to the public that it was an outlet of BJB Electric.

NCE relies on *Dixie Gas & Food, Inc.* v. *Shell Oil Co.*, No. 03 C 8210, 2005 WL 1273273 (N.D. Ill. May 25, 2005), arguing that it need not make allegations specific to the requirements of Section 3 of the IFDA to withstand a motion to dismiss. In *Dixie Gas*, the plaintiffs, several operators of Shell-branded gas station and mini-mart businesses, sued Shell Oil Co. and related entities, alleging *inter alia*, that they had violated the IFDA. Shell argued that the plaintiffs lacked standing to sue under the IFDA because they failed to plead facts establishing each element of the franchisee-franchisor relationship. Judge Gottschall rejected Shell's arguments, ruling that the complaint's explicit allegations that plaintiffs were franchisees and that the Shell entities were franchisors was sufficient under federal notice pleading standards. *Id.* at *4. Here, not only has NCE failed to explicitly allege that a franchisee-

---

[4] As contemplated by the language of the IFDA, the Illinois Attorney General, defined as the Administrator of the statute, has propounded several implementing regulations. *See To-Am. Equip. Co.* v. *Mitsubishi Caterpillar Forklift Am.*, 152 F.3d 658, 662 (7th Cir. 1998).

franchisor relationship exists, it has not alleged, as the plaintiffs in *Dixie Gas* had, that it operated a business under BJB Electric's mark, or any other facts necessary to establishing a franchise, such as a marketing plan prescribed by BJB Electric, or that it primarily identified itself to its customers under BJB Electric's name or mark or otherwise used the mark in a manner likely to convey to the general public that it was an outlet of BJB Electric. *See Mechanical Rubber & Supply Co.* v. *American Saw & Mfg. Co.*, 810 F. Supp. 986, 991 (C.D. Ill. 1990) (IFDA claim dismissed where distributor of Lenox brand saw blades failed to plead that it was a franchisee within the meaning of the IFDA but merely alleged use of the Lenox mark in marketing and failed to further allege that it "used the Lenox name or mark to identify its business to its consumers or to convey to the public that Mechanical Rubber [was] an outlet of [the manufacturer].").

In addition, NCE does not allege that it paid a franchise fee, the third statutory element of a franchise relationship. A franchise fee is defined under Section 3(14) of the IFDA as

> [A]ny fee or charge that a franchisee is required to pay directly or indirectly for the right to enter into a business or sell, resell, or distribute goods, services or franchises under an agreement, including, but not limited to, any such payment for goods or services, provided that the Administrator may by rule define what constitutes an indirect franchise fee[5] . . . .

815 Ill. Comp. Stat. 705/3(14). A franchise fee may be present "regardless of the designation given to or the form of the fee, whether payable in lump sum or installments, definite or indefinite in amount, or partly or wholly contingent on future sales, profits or purchases of the franchise business." 14 Ill. Admin. Code § 200.104. NCE admits that it has failed to explicitly plead that it paid BJB Electric a franchise fee but nevertheless argues that one may be inferred

---

[5] "An indirect franchise fee within the meaning of Sec. 3(14) includes, but is not limited to, an element of the price or rent charged for equipment, real estate, raw materials or services which the franchisee is required by agreement to buy or lease from the franchisor, an affiliated company of the franchisor or an unaffiliated company who pays any consideration to the franchisor or an affiliate." 14 Ill. Admin. Code § 200.105.

because "it is unnecessary that the franchise fee be labeled as such, and because it could have accumulated over a number of years." NCE's Mem. in Resp. at 5. While the definitions of a franchise fee under the IFDA are "sweeping in their scope," *To-Am Equip. Co*. v. *Mitsubishi Caterpillar Forklift Am., Inc*., 152 F.3d 658, 662 (7th Cir. 1998), NCE has failed to make any allegations regarding monies it paid to BJB Electric from which the court might infer a franchise fee was paid.

Although federal court permits notice pleading, a party must plead sufficient facts to make a claim plausible on its face. The facts that NCE alleges simply do not reach even that low threshold.[6]

## CONCLUSION AND ORDER

For the forgoing reasons, BJB Electric's motion to dismiss Count III of NCE's counterclaim [#26] is granted. NCE may file an amended counterclaim within fourteen days.

Dated: February 9, 2010        Enter: _____

                                   JOAN HUMPHREY LEFKOW
                                   United States District Judge

---

[6] Because the court finds that NCE has failed to state a claim under the IFDA, it need not address BJB Electric's additional arguments that the statute of limitations bars the claim (because it is an affirmative defense, normally not appropriate for a motion to dismiss) and failure to allege fraudulent practices. *See Borsellino* v. *Goldman Sachs Group, Inc*., 477 F.3d 502 (7th Cir. 2007) ("A claim that sounds in fraud--in other words, one that is premised upon a course of fraudulent conduct--can implicate Rule 9(b)'s heightened pleading requirements.") (citations omitted) (internal quotation marks omitted)). Should NCE replead, however, it should give attention to these issues before submitting an amended pleading.